**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SINDY HAMBLEY, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 4:10-CV-02580 |
| | : | |
| vs. | : | (Complaint Filed 12/20/10) |
| | : | |
| MICHAEL ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | (Judge Caputo) |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

**BACKGROUND**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Sindy Hambley's claim for supplemental security income benefits.  For the reasons set forth below we will affirm the decision of the Commissioner.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income.

Hambley was born in the United States on November 17, 1965. Tr. 77.[1] Hambley completed the 8th grade in about 1980 and can read, write, speak and understand English. Tr.  106 and 111.  There is no indication that Hambley after withdrawing from school obtained a General Equivalency Diploma. Id.    Hambley has an extremely limited

---

[1] References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of his Answer on December 6, 2010.

work and earnings history. Tr. 86-87.  It appears that her prior work consisted primarily of

unskilled, light to medium work [2] as a cleaning person. Tr. 107-108 and 113-114.  Her total

_____

[2]The terms sedentary, light, medium and heavy work are defined in the regulations
of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting
> no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers, and
> small tools. Although a sedentary job is defined as one
> which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met.

> (b) *Light work*.  Light work involves lifting no more
> than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even
> though the weight lifted may be very little, a job is
> in this category when it requires a good deal of
> walking or standing, or when it involves sitting most
> of the time with some pushing and pulling of arm or leg
> controls.  To be considered capable of performing a
> full or wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine that
> he or she can also do sedentary work, unless there
> are additional limiting factors such as  loss of fine
> dexterity or inability to sit for long periods of time.

> (c) *Medium work*.  Medium work involves lifting no
> more than 50 pounds at a time with frequent lifting or
> carrying of objects weighing up to 25 pounds.  If
> someone can do medium work, we determine that
> he or she can do sedentary and light work.

> (d) *Heavy work*.  Heavy work involves lifting no more
> than 100 pounds at a time with frequent lifting or
> carrying of objects weighing up to 50 pounds. If
> someone can do heavy work, we determine that he
> or she can also do medium, light, and sedentary work.

(continued...)

earnings from 1980 through 2009 were $6951.99. Tr. 86.

On January 2, 2008, Hambley protectively filed[3] an application for supplemental security income benefits. Tr. 9 and 77-84.  Hambley claimed that she became disabled on January 2, 2007, because of an irregular heartbeat, poor vision and curvature of the spine.  Tr. 26 and 107.   Hambley contends that she stopped working on July 31, 2007, because her vision got so bad that she was afraid to drive. Tr. 107.

Hambley's alleged disability onset date of January 2, 2007, has no impact on Hambley's application for supplemental security income benefits because supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met."  See C.F.R. § 416.501. Consequently, Hambley is not eligible for SSI benefits for any period prior to February 1, 2008.

On June 17, 2008, the Bureau of Disability Determination[4] denied Hambley's application. Tr. 26-30.   On July 16, 2008, Hambley requested a hearing before an administrative law judge. Tr. 31-33.   A hearing was scheduled for December 17, 2009. Tr. 73.  Prior to that hearing Hambley informed the administrative law judge that she would not

---

[2](...continued)

20 C.F.R. § 416.967.

[3]Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

[4]The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for supplemental security income benefits on behalf of the Social Security Administration. Tr. 26.

appear at the hearing and requested that her claim be decided on the evidence in the record. Tr. 74.  On December 17, 2009, a hearing was held before an administrative law judge at which the administrative law judge took testimony from a vocational expert. Tr. 19-24.  On January 4, 2010, the administrative law judge issued a decision denying Hambley's application. Tr. 9-16.  On January 27, 2010, Hambley filed a request for review with the Appeals Council and on October 29, 2010, the Appeals Council concluded that there was no basis upon which to grant Hambley's request for review. Tr. 1-3.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.  Hambley then filed a complaint in this court on December 20, 2010.  Supporting and opposing briefs were submitted and the appeal[5] became ripe for disposition on May 21, 2011, when Hambley elected not to file a reply brief.

## STANDARD OF REVIEW

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner.  See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin.,  181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."  Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by substantial evidence must be upheld. 42

---

[5]Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

U.S.C. §405(g); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); <u>Keefe v. Shalala</u>, 71 F.3d 1060, 1062 (2d Cir. 1995); <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988)(quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>Johnson v. Commissioner of Social Security</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. <u>Brown</u>, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Federal Maritime Commission</u>, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," <u>Cotter</u>, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason</u>, 994

F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims.  See 20 C.F.R. . § 416.920; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a

6

claimant (1) is engaging in substantial gainful activity,[6] (2) has an impairment that is severe or a combination of impairments that is severe,[7] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[8] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[9]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and

---

[6]If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

[7] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2).

[8]If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

[9]If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

## MEDICAL RECORDS

During the initial claim process, Hambley was requested to provide information regarding her medical treatment.  Tr. 103-147.  Hambley provided very little information.  Id. On  February 4, 2008, Hambley indicated in a document entitled "Disability Report - Adult" that she was treated for chest pain at the Wayne Memorial Hospital on one occasion in June, 2007. Tr.  109.  In a document entitled "Disability Report - Appeals" dated July 25, 2008, Hambley stated that since she last completed a disability report she had only received treatment at a "hospital" located in "Honesdale" but gave no further details of the treatment. Tr. 135-147.  She further stated that she was taking no medications because she could not afford them.  Tr.  143.

The limited medical records reveal that Hambley on May 8, 2007, visited the emergency room at Wayne Memorial Hospital, Honesdale, Pennsylvania, with complaints of chest pain resulting from an assault that occurred a couple days prior to the emergency room visit. Tr. 165-195.    Hambley appeared well nourished, alert, and oriented. Tr. 166. Hambley appeared in no acute distress and in no obvious discomfort. Id.   Within thirty minutes after being escorted to the emergency department, Hambley wanted to leave against medical advice. Id.   She stated that she could not be at the hospital that evening and wanted to return in the morning. Id.   Hambley was informed of her need to have a CT

scan of the chest.  Id.   Hambley responded to that information by stating that she would have a CT scan as long as she could go outside and smoke a cigarette.  Id.   Hambley was permitted to go outside for a cigarette break. Id.  After smoking a cigarette Hambley returned to the emergency room and underwent the CT scan.  Id.   While at the hospital cardiac testing revealed normal findings, including a normal chest x-ray and CT scan of the chest. Id.  Also, blood tests revealed that Hambley had been consuming alcoholic beverages. Tr. 174.   Her blood alcohol level was over the legal limit at .082 percent.[10]  Id.   Hambley was diagnosed with musculoskeletal chest pain and discharged from the hospital with instructions to follow-up with her family medical doctor and to stop smoking. Tr. 171.

In May, 2008, Hambley was examined by Don W. Henderson, M.D., on behalf of the Bureau of Disability Determination. Tr. 197-200.  Dr. Henderson is Board Certified in Internal Medicine. Tr. 201.  After examining Hambley, Dr. Henderson's impression was as follows: " This is a 42-year-old white female who alleges a bad heart valve, never really remembers ever having an echocardiogram. She had dyspnea[11] on exertion, but she has been a smoker for a long time and probably is developing early chronic obstructive pulmonary disease.  Her blood pressure is elevated in her right arm when taken twice and I urged her to find a local physician for followup and to avoid salt.  She has no orthopedic range of motion difficulties." Tr. 199 (emphasis added).  Dr. Henderson found that Hambley vision was 20/100 in her right eye and 20/25 in her left eye without corrective lenses. Tr. 196

On June 16, 2008, Leo Potera, M.D., a state agency physician, reviewed

---

[10]The legal limit in Pennsylvania is .08 percent.  75 Pa.C.S.A. § 3731.

[11]Dyspnea is "difficult or labored breathing." Dorland's Illustrated Medical Dictionary, 520 (27th Ed. 1988).

Hambley's available medical records and completed a Physical Residual Functional Capacity Assessment form. Tr. 202-208.  Dr. Potera concluded that Hambley had the ability to engage in medium work on a full-time basis.

The record reveals that in January, 2009, the administrative law judge took steps to develop the medical evidence by requiring Hambley to submit information regarding her medical treatment and undergo an examination at the Northeastern Eye Institute, Scranton. Tr. 149-64.  On two occasions Hambley was referred for an eye examination and on both occasions Hambley failed to keep the appointments.  Tr.  14 and 148-150.

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Hambley had not engaged in substantial gainful work activity since January 2, 2008, the date her application for SSI benefits was filed. Tr. 11.   In so finding the administrative law judge stated as follows: "The claimant's earnings record showed earnings of $400.73 for 2007.  Although the claimant worked after the alleged disability onset date this work activity did not rise to the level of substantial gainful activity."  Id.

At step two of the sequential evaluation process, the administrative law judge found that Hambley had the following severe impairments: high blood pressure, poor vision in the right eye, and dyspnea on exertion.  Id.   The administrative law judge found that Hambley's complaints of chest and low back pain were non-severe impairments. Id.

At step three of the sequential evaluation process the administrative law judge found that Hambley's impairments did not individually or in combination meet or equal a listed impairment. Tr. 12.

At steps four and five of the sequential evaluation process the administrative

law judge found that Hambley  had no prior relevant work but that she had the residual functional capacity to perform a limited range of medium work,[12] as a warehouse worker, kitchen helper and bagger, and there were a significant number of such jobs in the regional and national economies. Tr. 12-16.   In so finding the administrative law judge relied on the opinions of Dr. Henderson and Dr. Potera and the testimony of the vocational expert . Tr. 14 and 16.

The administrative record in this case is 208 pages in length and we have thoroughly reviewed that record.   The administrative law judge did a thorough job of reviewing Hambley's vocational history and medical records in his decision. Tr. 11-16. Furthermore, the brief submitted by the Commissioner adequately reviews the medical and vocational evidence in this case. Doc. 9,  Brief of Defendant.  Hambley's only argument is that the case should be remanded for further proceedings because the administrative law judge did not appropriately develop the record.  We find no merit in Hambley's argument.

Hambley failed to attend two consultative examinations regarding her alleged vision problems.  Hambley also declined to attend the administrative hearing and requested that the administrative law judge make a decision based on the evidence in the record.  The administrative law judge took appropriate steps to develop the record.  Hambley has not proffered as part of the present appeal any additional medical records or suggested that there are additional medical records to be found which would draw into question the

---

[12]The administrative law judge accommodated Hambley alleged breathing and vision problems. Tr. 13.  He provided as follows: "[Hambley] must avoid concentrated exposure to hazards such as moving machinery and heights, and irritants such as dust, odors, fumes, gases, chemicals, and poorly ventilated spaces.  She is capable of learning, understanding, remembering, and performing work tasks that do not require fine far visual acuity, fine depth perception, or a significant field of vision with the right eye." Id.

administrative law judge's decision denying her benefits.  Finally, Hambley has the option to file a new application for supplemental security income benefits based on any new evidence of medical treatment for a disabling condition.[13]

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence.  We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the  decision of the Commissioner.

An appropriate order will be entered.

s/A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge

Dated: December  16, 2011

---

[13]Supplemental security income is a needs based program and eligibility for this benefit is not limited based on an applicant's date last insured.

12

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SINDY HAMBLEY, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 4:10-CV-02580 |
| | : | |
| vs. | : | (Complaint Filed 12/20/10) |
| | : | |
| MICHAEL ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | (Judge Caputo) |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant | : | |

## ORDER

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Clerk of Court shall enter judgment in favor of the Commissioner and against Sindy Hambley as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Sindy Hambley supplemental security income benefits is affirmed.

3. The Clerk of Court shall close this case.


s/A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge


Dated: December 16, 2011

13